## (October 24, 1973)

JOE E. MOSES, Respondent, v. H. JORDAN LEE, Appellant, and BOARD OF ELECTIONS OF NASSAU COUNTY, Respondents.— In a proceeding pursuant to section 330 of the Election Law to validate a petition designating petitioner,

Joe E. Moses, as the candidate of the Peoples' Choice Independent Party for the public office of City Court Judge of the City of Long Beach, the appeal is from a judgment of the Supreme Court, Nassau County, entered October 18, 1973, which granted the application and directed the respondent Board of Elections to place petitioner's name upon the ballot in the general election to be held on November 6, 1973. Judgment reversed, on the law and the facts, without costs, and proceeding remanded to Special Term, with directions to hold an immediate hearing *de novo* upon the issues hereinafter mentioned and to render a new determination. Upon the argument of this appeal petitioner contended that he had filed with the Board of Elections seven separate volumes of papers, fastened together with many staples, which were later undone, with the result that many constituent pages were missing from the file when the Board of Elections later processed these papers. It was his claim that the papers filed contained 1,641 signatures. It now appears that the papers processed by the Board of Elections consisted of seven volumes and that the sheets therein were numbered and contained purported signatures, according to notations made on the cover sheets of the volumes, as follows:

| Volume | Sheets Numbered | Purported Signatures |
|---|---|---|
| I | 1 to 26 | 268 |
| II | 27 to 52 | 275 |
| III | 53 to 73 | 234 |
| IV | 74 to 97 | 280 |
| V | 98 to 123 | 143 |
| VI | 124 to 144 | 199 |
| VII | 145 to 167 | 242 |
| | | 1,641 |

It now further appears, without explanation, that sheets numbered 110 to 119, inclusive, supposedly contained in Volume V, were actually missing therefrom when processed by the Board of Elections. The board passed upon a Volume V which contained sheets numbered 98 to 109 and then skipped through to sheet 120. What actual number of valid signatures was contained in the missing sheets does not presently appear. According to the learned Special Term, the Board of Elections concluded that petitioner's designating papers contained a total of only 1,626 signatures, according to its count; that of this number, 1,151 were contained in the sheets numbered 1 through 109; and that 681 of these 1,151 signatures were invalid for various deficiencies. Special Term found that only sheets numbered 1 through 109 were correctly to be counted; that in these sheets the Board of Elections had improperly invalidated 455 signatures, leaving a total number of 696 valid signatures on sheets 1 through 109. Since the number of signatures needed for nomination is concededly 695, Special Term found no necessity for investigating into the propriety of signatures otherwise challenged. The difficulty with the conclusion that inspection of the sheets numbered 1 through 109 is sufficient may be found in the fact that, of the 696 signatures validated at Special Term, it now appears that two of those signatures were not good in that they were furnished by voters residing outside of the Judicial District here involved. There would thus be left only 694 valid signatures, two less than the required number. Under the circumstances, it is our view that there should be a remand and an immediate hearing *de novo* to determine whether the papers allegedly filed by petitioner were later unstapled and, if so, by whom and for what purpose; whether the papers filed actually contained the sheets

in consecutive number and the number of signatures as set forth in the entries contained on the cover sheets; whether the signatures contained in missing sheets 110 to 119, inclusive, are to be counted; and, if they contained valid signatures, the number thereof, if ascertainable. In addition to the foregoing, Special Term must further consider and decide whether sheets beyond number 119 and up to sheet 167 contain valid or invalid signatures and whether they should be counted. Special Term should also state the number thereof so that a comprehensive determination upon all the signatures filed will be present to support or reject the ultimate and necessary finding that 695 valid signatures were or were not filed in support of the nomination here at issue. Hopkins, Acting P. J., Munder, Martuscello, Shapiro and Brennan, JJ., concur.